# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALEXANDER ROBERT SPITZER,

      Plaintiff-Appellant,

v

JAY ABRAMSON, ABRAMSON LAW
OFFICERS, PLLC, MICHAEL BRYCE
WINNICK d/b/a LAW OFFICE OF MICHAEL
BRYCE WINNICK,

      Defendants-Appellees.

UNPUBLISHED
October 24, 2017

No. 333158
Oakland Circuit Court
LC No. 2015-145126-NM

---

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals by right an April 26, 2016, trial court order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) on grounds that plaintiff's legal malpractice claims were barred by collateral estoppel. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Plaintiff commenced this legal malpractice suit on January 22, 2015, based on allegations of malpractice that allegedly occurred during defendants' representation of plaintiff during plaintiff's divorce proceeding against his former wife Ann Silverman. Plaintiff and Silverman married in 1980 and both were medical doctors who earned substantial incomes—plaintiff alleged that Silverman earned over $600,000 per year while plaintiff earned over $200,000 per year. Plaintiff and Silverman owned real property in West Bloomfield, Ann Arbor, Sault St. Marie, and on Mackinac Island and a small airplane. During the divorce proceeding, Judge Lambros presided and the issue in dispute involved division of the marital assets and whether Silverman should pay spousal support. Ultimately, plaintiff entered into a consent agreement regarding a division of the marital assets; the agreement stipulated that plaintiff would not receive spousal support. According to plaintiff, under the agreement, he received $1.6 million of the estate and Silverman received $2.4 million. Before accepting the settlement, both Silverman and plaintiff testified that they had consulted with counsel and that it was in their best interests to settle. Plaintiff also testified that he understood the options open to him and entered into the agreement voluntarily, intelligently and knowingly.

-1-

Thereafter, Silverman moved for entry of a consent judgment of divorce (JOD) that incorporated the terms of the agreement. However, plaintiff obtained new counsel and moved to set aside the agreement, claiming that Winnick and Silverman's lawyer Leanne Deuman coerced him into entering the agreement and that the agreement was unconscionable. This Court described plaintiff's motion to set aside and the trial court's—i.e. Judge Lambros' denial of that motion as follows:

> Spitzer attached copies of his email and written correspondence with Winnick in support of his motion to set aside the settlement. The correspondence revealed that Winnick frequently addressed Spitzer with strong—even unprofessional—language and tones. In particular, Winnick warned Spitzer that it was his belief that Spitzer might have engaged in misconduct when he used a power of attorney from his father to transfer funds from his father's accounts and used his father's trust to pay for repairs to the airplane. Winnick wrote that the transfers might expose Spitzer to civil or criminal liability and opined that his conduct compromised the viability of his claims in the divorce. Winnick stated that he would continue to treat Spitzer as "at risk for criminal indictment" until he reduced the transactions to writing and ensured that they were transparent and proper. Winnick also vigorously urged Spitzer to settle the divorce in order to avoid what he characterized as the risk of criminal investigation that might leave Spitzer without a license to practice medicine.
>
> * * *
>
> The trial court heard arguments and took testimony concerning the events surrounding Spitzer's decision to enter into the settlement agreement in March, April, and June 2013. On August 6, 2013, the trial court heard closing arguments and announced its decision.
>
> The court stated that Spitzer did not contend "that he was prevented from understanding ... the nature and effect of the agreement because of fraud, mutual mistake or severe distress." Rather, he claimed the settlement was the result of "duress or coercion." The trial court found that Spitzer was not coerced into entering into the agreement by Deuman's previous threats to report [an incident involving the couple's airplane] to the FAA because Spitzer knew that the . . . incident did not need to be reported and would not result in any sanctions. The court stated that the "landing mishap" was not "even a consideration" when Spitzer negotiated the settlement.
>
> The court similarly rejected the contention that Winnick coerced Spitzer into settling by stating that Spitzer's handling of his father's money was suspect. If there is a dispute over the handling of those funds, that dispute would be between Spitzer and the trust and had nothing to do with the decision to settle.
>
> Finally, the trial court rejected Spitzer's contention that the settlement agreement was unconscionable. []The trial court denied the motion to set aside the settlement and indicated that it would sign the judgment of divorce. [*Silverman v*

-2-

*Spitzer*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2014 (Docket No. 317682).]

Plaintiff appealed Judge Lambros' denial of his motion to set aside the agreement, arguing, *inter alia*, that the trial court erred in denying his motion to set aside the settlement agreement and that the evidence showed that, through duress or coercion, both Silverman's attorney Deuman and his own counsel Winnick coerced him into entering into the settlement agreement. *Id*. at 5. This Court held that, to set aside a settlement agreement based on coercion or duress, plaintiff needed to show that Dueman and Winnick participated in the coercion. *Id*. at 9. This Court explained the law governing when a settlement agreement can be set aside based on coercion or duress as follows:

> It is well established that duress or coercion cannot be used to set aside an agreement unless the duress or coercion was caused by the opposing party. Consequently, a party cannot set aside an agreement on the ground that his or her lawyer coerced the settlement; there must be evidence that the opposing party actively participated in the coercion. [*Silverman*, slip op at 9 (citations and footnote omitted.).]

At the end of this paragraph, this Court included the following footnote:

> In such cases, the client has an adequate remedy; the client can sue his or her lawyer for malpractice: if the jury finds for the client, the judgment will compensate the client for the difference between the value of the coerced settlement and a fair division of the marital estate. [*Id*. at 9 n 4.]

This Court proceeded to hold that the trial court did not abuse its discretion in refusing to set aside the settlement agreement where there was no evidence to show that Deuman colluded with Winnick to effectuate such coercion. *Id*. at 9-10, stating:

> Spitzer presented strong evidence that Winnick engaged in unprofessional conduct. Winnick's communications with Spitzer show that Winnick did not treat Spitzer with dignity and respect—he used profane language and accused his client of reprehensible conduct. It is also evident that Winnick believed that Spitzer had severely undermined his ability to obtain spousal support from Silverman and, for that reason, placed substantial pressure on Spitzer to settle. Furthermore . . . the circumstances surrounding the events on the day of the settlement permit an inference that Winnick took advantage of events to persuade Spitzer that he had to quickly settle the case, even though it might not have been in his best interest to do so at that time. *But even assuming that Winnick engaged in wrongful and oppressive conduct that overcame Spitzer's will and forced him to settle . . . there is no evidence that Deuman colluded with Winnick to coerce Spitzer to settle on that basis or otherwise directly participated in Winnick's coercion.*
>
> We cannot agree with Spitzer's contention on appeal that Deuman participated in Winnick's coercion by creating an environment that made Winnick's coercion more effective. *In order to warrant setting aside a settlement on the grounds of*

*duress or coercion, the opposing party must himself or herself engage in wrongful conduct to coerce settlement.*

\* \* \*

[] Deuman's acts did not rise to the level of illegal, manifestly unjust, or purposely oppressive conduct done to coerce Spitzer into settling. Because there is no evidence that Silverman—through Deuman—participated in Winnick's coercive conduct, even if Winnick wrongfully coerced Spitzer to settle, that coercion would not warrant setting aside the settlement agreement. *Therefore, we need not determine whether the trial court clearly erred when it found that Winnick's threats and actions did not coerce Spitzer into settling. Even if the trial court had clearly erred in that regard, that error would not warrant relief because neither Deuman nor Silverman participated in Winnick's coercion.* The trial court did not abuse its discretion when it denied Spitzer's motion to set aside the settlement agreement. [*Silverman*, slip op at 9-10 (citations omitted) (emphasis added).]

After this Court affirmed Judge Lambros' order, our Supreme Court denied plaintiff's application for leave to appeal. *Silverman v Spitzer*, 498 Mich 866; 866 NW2d 443 (2015). Plaintiff then commenced this suit on January 22, 2015, alleging, *inter alia*, that defendants Abramson and Winnick, and their respective law offices engaged in legal malpractice during their representation of plaintiff in the divorce proceeding. In the complaint, plaintiff alleged that defendants were negligent and engaged in legal malpractice during their representation of plaintiff in the divorce proceeding. Plaintiff alleged that the legal malpractice and negligence were the proximate cause of his entering into the settlement, causing him to suffer damages. Plaintiff alleged the following counts against both Winnick and Abramson and their respective law firms: legal malpractice, negligence, breach of contract, and unjust enrichment.

On December 15, 2015, Winnick moved for summary disposition pursuant to MCR 2.116(C)(7), which Abramson later joined. Winnick argued that the gravamen of the complaint was a malpractice claim and the malpractice claim was barred by either judicial estoppel or collateral estoppel. Winnick argued that plaintiff's malpractice claim was barred by collateral estoppel where plaintiff's claims were predicated on the assertion that Winnick coerced him into a settlement. Winnick argued that plaintiff advanced this same argument in the divorce proceeding and the trial court rejected it when it denied plaintiff's motion to set aside the settlement agreement. The trial court found that plaintiff knowingly and voluntarily agreed to the settlement and therefore rejected plaintiff's argument that he was coerced into the agreement. In addition, Winnick argued that this Court in *Silverman* did not disturb Judge Lambros' finding that Winnick did not compel plaintiff to enter the agreement. Therefore, according to Winnick, the trial court's "ruling that [plaintiff] wasn't coerced into settling is the final word on that issue" and plaintiff's malpractice claim was barred by collateral estoppel and summary disposition was proper under MCR 2.116(C)(7).

Plaintiff responded, arguing that with respect to collateral estoppel, plaintiff argued that Winnick's coercion was not barred by the doctrine where Winnick's coercion was not a question of fact "essential to the judgment" in the divorce proceeding. In the divorce proceeding, this

Court explained that coercion sufficient to set aside the settlement agreement required a showing that the opposing party participated in the duress/coercion, and this Court held that there was no evidence to show that Deuman participated in the coercion. Therefore, according to plaintiff, Winnick's coercion was not essential to the final judgment in the divorce proceeding and plaintiff's malpractice claim was not barred by collateral estoppel.

On March 30, 2016, the trial court held a motion hearing. After the parties presented their oral arguments, the trial court held as follows:

> I have a Circuit Court Judge, Judge Lambros, who held a very long hearing, heard all the evidence and testimony of coercion claimed by Dr. Spitzer in this case on the part his attorneys. And that Circuit Court Judge, after hearing all of that evidence and testimony about the alleged coercion found that Dr. Spitzer was not coerced by his attorneys in entering into this settlement agreement.
>
> That was never disturbed by- -that finding was never disturbed by the Court of Appeals and- -so I have a standing ruling by a Circuit Court Judge that this plaintiff was not coerced by his attorneys. Therefore, I'm forced by collateral estoppel to grant the motion on that basis, collateral estoppel, and I'm granting both motions based on collateral estoppel and I'm not addressing the other issues because I'm granting it on that, okay?

The trial court entered a written order on April 26, 2016, granting summary disposition to defendants pursuant to MCR 2.116(C)(7). This appeal ensued.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Application of the collateral estoppel doctrine involves a question of law that is reviewed de novo. *Holton v Ward*, 303 Mich App 718, 731; 847 NW2d 1 (2014). When a claim is barred by collateral estoppel, summary disposition is appropriate under MCR 2.116(C)(7). *Minicuci v Scienfic Data Mgt, Inc*, 243 Mich App 28, 42; 620 NW2d 657 (2000). "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (citation omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred in finding that his malpractice claims were barred by collateral estoppel. Plaintiff argues that in *Silverman*, this Court affirmed the trial court's denial of his motion to set aside the settlement on grounds that Deuman did not coerce plaintiff. Thus, whether Winnick coerced plaintiff was not a question of fact that was litigated and essential to the judgment in the divorce proceeding. Defendants respond that whether plaintiff

was coerced into settling was fully litigated where the trial court heard plaintiff's testimony and decided the issue against plaintiff and where this Court in *Silverman* did not disturb that finding.

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 528; 866 NW2d 817 (2014). The purpose of the doctrine is "to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Monat v State Farm Ins Co*, 469 Mich 679, 692-693; 677 NW2d 843 (2004). Generally, for collateral estoppel to apply three elements must be satisfied:

> (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel. [*Rental Props Owners Ass'n of Kent Co*, 308 Mich App at 529.]

Here, in the divorce proceeding plaintiff moved to set aside the settlement agreement, arguing in part that Winnick coerced him into entering the agreement. The trial court denied the motion; in denying the motion, the trial court made a finding of fact that Winnick did not coerce plaintiff. The trial court specifically found that the evidence did not support plaintiff's allegations of coercion. The trial court heard testimony over the course of a three-day hearing, the court then made factual findings and based on those findings, held that there was no evidence of coercion. The trial court's finding with respect to coercion was essential to its ruling on the motion to set aside the settlement agreement, it was actually litigated, and it was determined by the court's valid and final judgement. *Rental Props Owners Ass'n of Kent Co*, 308 Mich App at 529.

Moreover, the trial court's factual finding regarding Winnick's coercion was not disturbed by this Court in *Silverman*. Specifically, this Court affirmed the trial court and did not find that the trial court's factual finding regarding Winnick and coercion was clearly erroneous. While this Court declined to address the finding in one part of its opinion, in another part of its opinion, this Court stated that "[t]he trial court presided over the settlement and had the opportunity to assess [plaintiff's] demeanor and, on the whole record, the trial court could reasonably find that [plaintiff's] testimony on that day was knowingly and voluntarily made." *Silverman*, slip op at 11. By including this statement, the panel in *Silverman* recognized that plaintiff presented his coercion argument to the trial court, the trial court had an opportunity to hear all of the evidence including plaintiff's testimony and based on the record before it, the court could have reasonably concluded that Winnick did not coerce plaintiff. Based on this statement in Silverman, the trial court's factual finding regarding Winnick could not be found to have been clearly erroneous. See e.g. *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010) (a trial court's factual findings are reviewed for clear error and this court "accord[s] special deference to a trial court's factual findings that were based on witness credibility."). In short, nothing in the *Silverman* opinion disturbed the trial court's factual finding that Winnick did not coerce plaintiff and that finding remained part of the trial court's valid and final judgment in the divorce proceeding.

Plaintiff argues that collateral estoppel does not apply in this case because the Silverman Court held that plaintiff presented "strong evidence that Attorney Winnick engaged in unprofessional conduct and took advantage of [plaintiff] in order to persuade him into accepting a quick settlement even though it may not have been in his best interest to do so." However, evidence of "unprofessional conduct" is not akin to evidence of coercion. Furthermore, the *Silverman* Court did not indicate that the evidence of unprofessional conduct was so substantial that the trial court's factual finding on coercion was clearly erroneous. Instead, as noted above, the *Silverman* Court stated that the trial could have reasonably concluded that plaintiff was not coerced into entering the settlement.[1]

Plaintiff also argues that "there was no finding by the Trial Court or this Court in the divorce case that was essential to this legal malpractice case." This argument is devoid of merit. In the divorce proceeding, plaintiff's effort to set aside the settlement agreement was premised on an allegation that Winnick coerced him to settle. Plaintiff's legal malpractice claims in this case were premised on the same allegation. Indeed, plaintiff admits in his appellate brief that he "brought this legal malpractice case alleging that his attorneys' unprofessional conduct coerced him into accepting an unfair divorce settlement." Thus, the gravamen of plaintiff's claim is that defendant attorneys engaged in malpractice, which caused him to enter into the settlement agreement. Given plaintiff's testimony in the divorce proceeding that he entered into the agreement knowingly and voluntarily, to succeed in this case, plaintiff needed to show that he was coerced into entering the settlement. As discussed above, this was an essential fact that was already litigated and decided against plaintiff in the divorce proceeding and plaintiff's malpractice claims were therefore barred by collateral estoppel. *Monat*, 469 Mich at 692-693.

Finally, plaintiff argues that, in the divorce proceeding, there were no factual findings as to the conduct of defendant Abramson such that the trial court erred in applying the doctrine of collateral estoppel to bar plaintiff's claims against Abramson. However, in this case, the gravamen of the complaint was that defendants' malpractice resulted in plaintiff being coerced into entering the settlement. As discussed above, the issue of a coerced settlement was already litigated and plaintiff is estopped from relitigating that issue. Therefore, all of plaintiff's claims are barred by collateral estoppel where all of the claims are premised on alleged malpractice that led to the alleged coerced settlement. See *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014) ("[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim."). Moreover, plaintiff did not allege any facts in the complaint to show that Abramson coerced plaintiff. Rather, plaintiff alleged at one point in the complaint that Abramson allowed Winnick to "force and/or intimidate the plaintiff to enter into a settlement."

---

[1] Plaintiff also argues that the *Silverman* Court stated in a footnote that in circumstances similar to plaintiff's circumstances, a plaintiff can bring a malpractice action. However, the footnote in *Silverman* referencing a malpractice action and other comments made in passing amounted to nonbinding dicta. See *City of Riverview v Michigan*, 292 Mich App 516, 523; 808 NW2d 532 (2011) ("A matter that a tribunal merely assumes in the course of rendering a decision, without deliberation or analysis, does not thereby set forth binding precedent.").

However, given that the issue of Winnick's coercion was decided in the divorce proceeding, there are no facts that plaintiff could allege or prove to show that Abramson allowed or participated in any alleged coercive behavior on the part of Winnick. Accordingly, the trial court did not err in holding that plaintiff's claims against both Winnick, Abramson and their respective law firms were barred by collateral estoppel. *Monat*, 469 Mich at 692-693.

In sum, plaintiff's claims in this case were premised on the allegation that defendants engaged in malpractice that led to plaintiff being coerced into entering a settlement agreement in his divorce proceeding. Because the trial court in the divorce case determined that plaintiff was not coerced into entering into the agreement, and because this Court did not disturb that finding, plaintiff's claims in this case are barred by the collateral estoppel doctrine and summary disposition was proper under MCR 2.116(C)(7).[2] *Minicuci*, 243 Mich App at 42.

Affirmed. Defendants having prevailed, may tax costs. MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[2] Given our conclusion with respect to this issue, we need not address the other arguments raised on appeal.